# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| PHILLIP O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:16-CV-519 (MTT) |
| | ) | |
| | ) | |
| NORFOLK SOUTHERN RAILROAD | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Plaintiff Philip O'Neal and Defendant Norfolk Southern Railroad Company have both moved for partial summary judgment. Docs. 15; 17. The motions are **DENIED**. In addition, O'Neal has moved to strike the opinions of Norfolk Southern's expert witness. Doc. 13. That motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND[1]

On January 30, 2016, O'Neal, while employed by Norfolk Southern, attempted to sit in a chair that then fell apart in the computer room of Norfolk Southern's Valdosta, Georgia train depot. Docs. 13-4 at 44:4-5; 17-4 ¶¶ 6-7. It is undisputed that the chair was defective and came apart when O'Neal sat on it, although the parties present conflicting characterizations of that event. Doc. 17-4 ¶¶ 6-7. O'Neal alleges he fell to the ground and that a co-worker, Michael Smith, saw O'Neal's hand fly up in the air as Smith walked into the computer room. Doc. 17-4 ¶¶ 9-19. Norfolk Southern disputes

---

[1] Unless stated otherwise, these facts are undisputed.

this version of events, claiming that O'Neal did not fall in the way he claims and, accordingly, that Smith witnessed no such thing. *Id.*

After the chair fell apart, Smith called Trainmaster Rodrea Booze to report the incident, and, during that phone call, both Smith and O'Neal spoke to Booze. Docs. 17-4 ¶¶ 18-20; 24-1 ¶¶ 11, 13-15. Booze then travelled to Valdosta from Macon, Georgia. Doc. 17-4 ¶ 21. In Valdosta, O'Neal asked Booze to take him to seek medical treatment, which he eventually did. Docs. 17-4 ¶ 24; 24-1 ¶¶ 45-47. Learning that the defective chair had not been inspected since 2009, despite a Norfolk Southern policy that chairs be inspected annually, Booze investigated the other chairs in the depot and found others that were defective. Docs. 15-5 at 18:16-23, 20:4-11, 22:9-12.; 23-1 ¶¶ 27-29.

When investigating the incident, Booze discovered that, just before he allegedly fell, O'Neal made a phone call to Norfolk Southern's "Operations & Service Support" (OSS) and that call was recorded. Docs. 17 at 3 n.4; 17-4 ¶¶ 29-30. In the recording, the following exchange can be faintly heard between O'Neal and Smith:

> O'Neal: Boy, I almost had me –
> Smith: You alright?
> O'Neal: Yeah. I caught myself but I almost – I almost had me one boy.
> Smith: Golly (or God-ly).

Doc. 15-18 at 20. Booze thought this to be inconsistent with O'Neal's claim that he fell. Doc. 15-5 at 81:13-25. Soon after, on February 8, 2016, O'Neal was charged with "making false and/or conflicting statements to a supervisor." Doc. 15-3. On March 2, 2016, Norfolk Southern conducted an official investigation, or hearing, in which O'Neal was represented by union officials. *See generally* Doc. 15-8. The hearing officer, Richard Brown, determined that O'Neal was lying. *Id.* Norfolk Southern then

terminated O'Neal's employment on March 16, 2016; O'Neil appealed that decision to

the Public Law Board, but that appeal was denied.  Docs. 15-3; 17-4.

O'Neal then filed this complaint, alleging claims under the Federal Railway Safety

Act (FRSA), 49 U.S.C. § 20109, and the Federal Employers Liability Act (FELA), 45

U.S.C. §§ 51-60, and now moves for summary judgment all on issues related to those

claims except damages.  Doc. 15.  Additionally, O'Neal moves to strike expert testimony

proffered by Norfolk Southern.  Doc. 13.  Norfolk Southern has also moved for summary

judgment regarding O'Neal's FRSA claim.  Doc. 17.  On May 11, 2018, the Court held a

hearing regarding all these motions.  Docs. 30; 33,

## II. SUMMARY JUDGMENT MOTIONS

### A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), a court "'can only grant summary judgment if

everything in the record demonstrates that no genuine issue of material fact exists'" and

that the movant is entitled to judgment as a matter of law.  *Strickland v. Norfolk S. Ry.

Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d

940, 952 (11th Cir. 1986)); *Gray v. Manklow (In re Optical Techs., Inc.)*, 246 F.3d 1332,

1334 (11th Cir. 2001).  When the movant bears the burden of proof at trial, the movant

holds the initial burden to establish there is no genuine dispute concerning whether the

elements of the claim or defense have been met.  *See United States v. Four Parcels of

Real Prop.*, 941 F.2d 1428,1438 (11th Cir. 1991).  In response, the non-movant may

defeat summary judgment by producing "significant, probative evidence demonstrating

the existence of a triable issue of fact.'"  *Id.* (quoting *Chanel, Inc. v. Italian Activewear of

Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  In contrast,

"[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). The movant "simply may show . . . that there is an absence of evidence to support the [non-movant]'s case." *Id.* at 1438 (internal quotation marks and citation omitted). "Assuming the [movant] has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).

A factual dispute is genuine so as to defeat summary judgment "only if a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quotation marks omitted). When determining if there is a genuine dispute, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). And "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* When both parties have moved for summary judgment, the standard of review does not change. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted). The Court will consider each motion on

its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

**B.  FELA Claim**

O'Neal claims he is entitled to summary judgment regarding his FELA claim on all issues except damages.  He claims there is no genuine dispute that: (1) he suffered an injury while working within the scope of his employment with Norfolk Southern; (2) his employment was in the furtherance of Norfolk Southern's interstate transportation business; (3) Norfolk Southern was negligent; and (4) its negligence played some part in causing his injury for which he seeks compensation.  *Aparacio v. Norfolk & W. Ry.*, 84 F.3d 803, 810 (6th Cir. 1996).  And he claims that there is no genuine dispute that, as required, he has established the common law elements of negligence: duty, breach, foreseeability, and causation. *Kelson v. Central of Ga. R. Co.*, 234 Ga. App. 200, 203, 505 S.E.2d 803 (1998).

However, despite O'Neal's assertion to the contrary, there is a genuine fact dispute regarding: (1) whether O'Neal actually fell to the ground because of the defective chair; (2) whether O'Neal was injured from that alleged fall; and (3) whether Norfolk Southern was negligent by failing to inspect the defective chair.  Whether O'Neal fell to the ground is a pure fact question, which also requires a credibility determination.  O'Neal claims he fell, while Norfolk Southern argues the OSS recording shows O'Neal did not fall.  Doc. 23-1 ¶ 9.  This is a question for the jury.  Similarly, there is a genuine dispute concerning whether O'Neal was injured and whether those injuries were caused by a fall from the chair—based on the evidence, a reasonable jury could find that O'Neal did not fall and thus that he did not suffer injuries as a result.  Finally,

despite O'Neal's argument to the contrary, that Norfolk Southern failed to inspect the

chair, thus violating its own internal policy, does not by itself establish that Norfolk

Southern was negligent. *See Luckie v. Piggly-Wiggly S., Inc.*, 173 Ga. App. 177, 178,

325 S.E.2d 844, 845 (1984) ("Privately established rules are admissible as illustrative of

negligence, but the violation of such a rule is not negligence in and of itself." (quotation

marks omitted)). There is still a dispute as to whether Norfolk Southern acted

reasonably and whether, if it failed to act reasonably, it caused O'Neal's injuries. These

are material facts for O'Neal's FELA claim. Thus, there is a genuine dispute regarding

whether O'Neal has met the elements of his claim, and he has not proven he is entitled

to judgment as a matter of law. Accordingly, his motion for partial summary judgment

on his FELA claim is **DENIED**.

## C. FRSA Claim

Both O'Neal and Norfolk Southern claim they are entitled to summary judgment

regarding O'Neal's FRSA claim. Under FRSA's burden-shifting framework, to establish

his claim, O'Neal must first establish that (1) he engaged in a protected activity; (2)

Norfolk Southern knew he engaged in the allegedly protected activity; (3) he suffered an

unfavorable personnel action; and (4) the protected activity was a contributing factor in

the unfavorable personnel action. *Kuduk v. BNSF Ry. Co.*, 768, 789 (8th Cir. 2014);

*Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). If O'Neal

makes this showing, the burden shifts to Norfolk Southern to demonstrate by clear and

convincing evidence that it would have taken the same unfavorable personnel action in

the absence of the protected activity. *Consolidated Rail Corp. v. United States DOL*,

567 F. App'x. 334, 337 (6th Cir. 2014). O'Neal claims there is no genuine dispute that

he has established the elements of his claim and is entitled to judgment as a matter of law on all issues except damages. Conversely, Norfolk Southern claims there is no genuine dispute that O'Neal cannot establish the elements of his claim and that, even if he could, it has demonstrated as a matter of law that it would have taken the same action.

Again, there remains a jury question regarding whether O'Neal actually fell from the chair. O'Neal claims he was injured when he fell and thus he reported a personal injury. Doc. 15-1 at 8. He also claims that Booze's actions of inspecting the other chairs in Valdosta show that he did in fact put Norfolk Southern on notice of a hazardous condition or a potentially hazardous condition. *Id.* Norfolk Southern disputes both of these claims, arguing, first, O'Neal did not fall and thus could not have reported an injury in good faith and, second, that O'Neal did not intend to report a hazardous condition but only that one chair was defective. Doc. 17-1 at 7-10. The Court cannot say as a matter of law that O'Neal engaged in protected activity. And because there is a genuine dispute as to whether O'Neal engaged in protected activity, there is naturally a dispute as to whether a protected activity was a contributing factor in the personnel decision.[2]

Moreover, Norfolk Southern asserts that O'Neal cannot prove the contributing factor element because it has offered a legitimate non-retaliatory reason for O'Neal's dismissal—that Norfolk Southern believed, based on the OSS recording, that O'Neal had lied to his supervisor. Doc. 17-1 at 14-16. Indeed, the relevant issue is not whether

---

[2] It is undisputed that O'Neal suffered an unfavorable personnel action. Doc. 24-1 ¶ 112. And at the May 11, 2018 hearing, Norfolk Southern retreated from its argument that O'Neal could not prove Norfolk Southern knew of his protected activity because the hearing officer did not know of it until the hearing and admitted that the "decision-maker knew about the alleged protected acts." Doc. 33 at 15:6-11.

Norfolk Southern's decision not to believe O'Neal and fire him was correct but whether

Norfolk Southern had a reasonable basis for that decision. *Id.*; *see also Kuduk*, 768

F.3d at 792 ("[F]ederal courts do not sit as a super-personnel department that re-

examines an employer's disciplinary decisions." (quotation marks and citation omitted)).

From the undisputed evidence, the Court cannot say that Norfolk Southern's belief that

O'Neal lied to Booze was reasonable as a matter of law. That conclusion was based on

Norfolk Southern's interpretation of the OSS recording, as ambiguous as it is, and an

evaluation of the reasonableness of Norfolk Southern's disbelief of O'Neal, and its

ultimate decision to fire him, calls for both a fact and credibility determination.

Therefore, there is a genuine dispute as to whether O'Neal can establish his prima facie

case. Additionally, Norfolk Southern has not shown by clear and convincing evidence

that it would have dismissed O'Neal despite the protected activity. Rather, the

undisputed evidence establishes that O'Neal's dismissal was rooted in what O'Neal

alleges was protected activity—his call to Booze.

In sum, neither party, through their summary judgment motions, has shown an

absence of a genuine fact dispute regarding O'Neal's FRSA claim or that they are

entitled to judgment as a matter of law. Accordingly, those motions are **DENIED**.

### III. MOTION TO STRIKE

Norfolk Southern has retained the services of Laura Wojcik, Ph.D., a

biomechanical engineer, as an expert witness. Wojcik has provided the following three

opinions:

> 1. Given the established principles of mechanical and biomechanical
> engineering, it is extremely unlikely that Mr. O'Neal could have fallen in
> the manner in which he has described;

2. Given the established principles of mechanical and biomechanical engineering, it is extremely unlikely that Mr. O'Neal could have acutely injured his lumbar discs in the falling incident he has described;

3. Given the dimensions and layout of the locker room and computer room, it would have been impossible for Mr. Smith to see Mr. O'Neal from just inside the locker room's exterior door.

Doc. 13-3 at 12.  O'Neal has moved to strike these expert opinions.

Whether a witness may provide expert opinion testimony is determined by Fed.

R. of Evid. 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (11th Cir. 1993), a

trial court acts "as a gatekeeper to insure that speculative and unreliable opinions do not

reach the jury." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005)

(citing *Daubert*, 509 U.S. at 589 n.7, 597).  Courts must analyze the qualifications of

expert witnesses, the foundations of their opinions, and whether the testimony is

relevant.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting

*McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253,1257 (11th Cir. 2002); *see also*

*Daubert*, 509 U.S. at 591; *Poulis-Minott v. Smith*, 388 F.3d 354, 359 (1st Cir. 2004).

Therefore, expert witness testimony is only admissible after a determination that the

expert is qualified to competently testify regarding the matters she intends to address,

that the methodology relied upon by the expert in reaching her conclusions is sufficiently reliable, and that the expert's testimony will assist the trier of fact. *See McCorvey,* 298 F.3d at 1257; *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999).

Proponents may establish an expert's qualification in various ways, including scientific training, education, or experience in a particular field. *Frazier*, 387 F.3d at 1260-61. "[T]here is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." *Santos v. Posadas De Puerto Rico Assocs. Inc.*, 452 F.3d 59, 63 (1st Cir. 2006). The court must focus on whether the expert has the requisite skill, experience, training and education to offer the testimony that the proponent seeks to introduce. *Poulis-Minott*, 388 F.3d at 359.

The Eleventh Circuit directs courts, when evaluating the reliability of expert testimony, to assess "whether the reasoning or methodology underlying the testimony is . . . valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1262 (quoting *Daubert*, 509 U.S. at 592-93) (alterations omitted). In so doing, courts should focus "solely on the principles and methodology [of the experts], not on the conclusions that they generate." *Daubert,* 509 U.S. at 595; *see also Goebel,* 346 F.3d at 992. *Daubert* offers four factors that courts may consider in evaluating the reliability of an expert's testimony: (1) testability; (2) error rate; (3) peer review and publication; and (4) general acceptance. 509 U.S. at 593-95; *see also J & V Dev., Inc. v. Athens-Clarke County,* 387 F. Supp. 2d 1214, 1224 (M.D. Ga. 2005). Other factors to consider, from the advisory committee's notes for Rule 702, are:

> (1)    Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the

litigation, or whether he has developed his opinion expressly for purposes of testifying;

(2)     Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

(3)     Whether the expert has adequately accounted for obvious alternative explanations;

(4)     Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;

(5)     Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 Advisory Committee's Note (2000 amendments).  However, both the

*Daubert* factors and those from the advisory committee's note are merely illustrative and

non-exhaustive, and no single factor is dispositive.  *See id.*; *Daubert*, 509 U.S. at 151-

52.  Courts have "considerable leeway" to decide the tests or factors to assess the

reliability of a particular expert's methodology.  *Daubert*, 509 U.S. at 151-52.

Finally, to actually assist the trier of fact, and therefore meet the relevancy

requirement, expert testimony must help the trier of fact understand facts in evidence or

determine a fact at issue.  Fed. R. Evid. 702(a).  This means the testimony must

"concern[ ] matters that are beyond the understanding of the average lay person."

*Frazier*, 387 F.3d at 1262.  "[E]xpert testimony generally will not help the trier of fact

when it offers nothing more than what lawyers for the parties can argue in closing

arguments."  *Id.* at 1262-63.  The burden to establish qualification, reliability, and

helpfulness lies with the proponent of the expert testimony.  *McClain v. Metabolife*

*Intern., Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005) (quotations and alterations omitted)

(quoting *Frazier*, 387 F.3d at 1260).

The Court finds Wojcik's first opinion—that "it is extremely unlikely that [O'Neal] could have fallen in the manner in which he has described"—to be admissible under *Daubert*'s standards. Doc. 13-3 at 12. First, as a mechanical engineer, who specializes in biomechanics, Wojcik is qualified to testify, from a biomechanical perspective, regarding the likelihood that O'Neal fell in the manner he described. Doc. 13-7 at 85:12-13. Additionally, there is a material issue as to (1) whether O'Neal fell in the manner he claims and (2) whether Norfolk Southern had a reasonable basis to find his story implausible. And biomechanics, which "appl[ies] . . . mechanical principles to the body," as a general rule, is beyond the understanding of an average lay person; thus, Wojcik's opinion that, from a biomechanical perspective, O'Neal could not have fallen like he describes offers more than simply what the attorneys could argue in closing arguments. *Id.* Accordingly, this opinion can assist the trier of fact. *See Frazier*, 387 F.3d at 1262-63.

Finally, the Court determines that Wojcik relied on sufficient facts and data and that her methodology was sufficiently reliable. Certainly, Wojcik could have done more to collect facts and data to more fully assess the likelihood of O'Neal's claims. And Norfolk Southern could have provided a more detailed description of the "established principles of mechanical and biomechanical engineering" and biomechanical analysis that Wojcik performed. Doc. 20 at 9. However, the Court is mindful that its "gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury." *Allison*, 184 F.3d at 1311. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In assessing

expert testimony, a court should not usurp the role of the fact-finder but should limit its inquiry to "ensur[ing] that the fact-finder weighs only sound and reliable evidence." *Frazier*, 387 F.3d at 1272.

However, the Court cannot find that Wojcik's other two opinions are admissible. Norfolk Southern has failed to establish how either of these opinions would be helpful to the jury. Wojcik's second opinion—that "it is extremely unlikely that [O'Neal] could have acutely injured his lumbar discs in the falling incident as he has described"—is not relevant to any fact issue in the case. Doc. 13-3 at 12. Although far from clear, Wojcik's deposition testimony supports that her opinion is that O'Neal did not suffer—or could not have suffered—a herniated disc. Doc. 13-7 at 80:6-23. But O'Neal does not claim that he has a herniated disc or that he "acutely injured a disc." Doc. 33 at 25:18-24, 26:25-27:1-7. And, at the motion hearing, Norfolk Southern was unable to explain what exactly this opinion was offered to prove. *Id.* at 25:14-28:17. If the proponent cannot articulate the relevancy of the expert's opinion, it certainly could not assist the jury and, therefore, is inadmissible. Given that, it is not necessary to address O'Neal's argument that Wojcik inappropriately offers a medical opinion. *See* Docs. 13-1 at 11; 33 at 21:15-19.

Finally, Wojcik's third opinion—that "it would have been impossible for Mr. Smith to see Mr. O'Neal from just inside the locker room's exterior door"—is inadmissible because it does not assist the trier of fact with a matter "beyond the understanding of the average lay person." Doc. 13-3 at 12; *Frazier*, 387 F.3d at 1262-63. Again, Smith claims that, as he walked a "couple of steps" into the computer room, he saw O'Neal's left arm flying through the air when O'Neal fell from the chair. Doc. 13-5 at 38:16-39:5.

But Wojcik opines, based on Smith's statements and her definition of what a "couple of steps" means, that Smith could not have seen O'Neal fall in the way he claims. Doc 13-7 at 17:8-18:3. Basically, Wojcik, based on where she placed Smith, thinks Smith did not have a line of sight to O'Neal. *Id*. However, at trial, Smith can testify as to how fast he was walking when he entered the computer room and where he was when he allegedly saw O'Neal's hand. Smith can even point to a diagram showing a jury where he was. From this, a jury can determine for its own whether Smith could have seen O'Neal in the way he described. And Norfolk Southern may cross-examine Smith regarding the plausibility of his version of events, allowing the jury to evaluate the veracity of Smith's claims. In sum, the jury does not need an expert to tell them whether Smith could see something when he was standing in a certain location. Wojcik's opinion offers nothing beyond what the lawyers can argue in closing arguments and, thus, would not assist the jury. *Frazier*, 387 F.3d at 1262-63. Therefore, that opinion is inadmissible.

O'Neal's motion to strike is **GRANTED in part** and **DENIED in part**.

### IV. CONCLUSION

For the reasons stated, neither party is entitled to judgment as a matter of law. Accordingly, Norfolk Southern's motion for summary judgment (Doc. 15) and O'Neal's motion for partial summary judgment (Doc. 17) are **DENIED**. Additionally, O'Neal's motion to strike (Doc. 13) is **GRANTED in part** and **DENIED in part**. Wojcik's first opinion is admissible, but her second and third opinions are inadmissible.

**SO ORDERED,** this 6th day of July, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT